UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| SARA RODRIGUEZ, | ) No. ED CV 13-00549-VBK |
| | ) |
| Plaintiff, | ) MEMORANDUM OPINION |
| | ) AND ORDER |
| v. | ) |
| | ) (Social Security Case) |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for disability benefits. Pursuant to 28 U.S.C. §636(c), the parties have consented that the case may be handled by the Magistrate Judge. The action arises under 42 U.S.C. §405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the record before the Commissioner. The parties have filed the Joint Stipulation ("JS"), and the Commissioner has filed the certified Administrative Record ("AR").

Plaintiff raises the following issues:

1. Whether the Administrative Law Judge ("ALJ") properly

```
                  considered all of the relevant medical evidence of record in
                  this case; and
          2.      Whether the ALJ properly considered Plaintiff's subjective
                  statements and properly assessed her credibility.
(JS at 6.)
```

This Memorandum Opinion will constitute the Court's findings of fact and conclusions of law.  After reviewing the matter, the Court concludes that the decision of the Commissioner must be affirmed.

**I**

**THE ALJ PROPERLY CONSIDERED ALL RELEVANT MEDICAL EVIDENCE OF RECORD AND DID NOT FAIL TO COMPLY WITH PRIOR VOLUNTARY REMAND ORDERS**

This case has a complicated procedural history.  Plaintiff received hearings from two ALJs, who issued unfavorable Decisions on August 28, 2009 (AR 8-17) and March 4, 2011 (AR 322-335).  The Court then approved a Stipulation to Voluntary Remand on May 12, 2010, incorporating the parties' "Stipulation to Voluntary Remand Pursuant to Sentence Four." (AR 348-349.)  As pertinent to the current litigation, the Stipulation to Voluntary Remand required that the ALJ offer Plaintiff a new hearing, and that, "The ALJ will also be directed to properly develop the record by re-contacting Plaintiff's treating sources <u>as necessary</u> and obtain evidence, if warranted, from a medical expert." (Emphasis added.)  A hearing was held on October 10, 2012 before a new ALJ (AR 826-889), and this resulted in the latest unfavorable Decision of November 30, 2012. (AR 801-817.)

Plaintiff's first complaint is that the ALJ failed to carry out the remand order because her then-treating physician, Dr. Sisson, was

2

not re-contacted. (JS at 7.)  Instead, Plaintiff argues that the ALJ "opted to simply adopt Dr. Sisson's statement regarding [Plaintiff's] limitations as his RFC, ..." (Id.)  The ALJ's Decision in fact does just that.  While the ALJ criticized the opinions of Dr. Sisson as having limited probative value, he stated, critically, that,

> "However, in order to give full weight to the subjective complaints of the claimant, and to fully comply with the directive of the remand order, the undersigned has adopted a residual functioning capacity identical to that advised by Dr. Sisson."

(AR 814, exhibit reference omitted."

The April 9, 2012 Order of the Appeals Council remanded the case to an ALJ "for further proceedings consistent with the order of the court."  As noted, the language of the remand judgment, based on the Stipulation of the parties, required the ALJ to obtain clarification from Dr. Sisson or other treating sources "as necessary."  This modification is critical, because, as Plaintiff concedes, the ALJ fully adopted Dr. Sisson's statement regarding Plaintiff's physical limitations within his own residual functional capacity ("RFC") determination.  As also noted by the ALJ, Plaintiff, who was represented by counsel at the ALJ hearing, stated that she was for several years no longer treating with Dr. Sisson, and counsel represented that there were no further records to be obtained from Dr. Sisson related to Plaintiff's treatment. (AR 808.)  Thus, it would have been a futile step for the ALJ to re-contact Dr. Sisson in view of the fact that he adopted Dr. Sisson's physical limitations within the RFC, and also received assurance from Plaintiff's counsel that

3

there were no further records to be obtained from Dr. Sisson. An ALJ is obligated to re-contact a treating source only in the event that there is ambiguity in the evidence or an inadequate record from which to evaluate the existing evidence. See Mayes v. Massanari, 276 F.3d 453, 460 (9th Cir. 2001). Neither situation exists in this case, therefore, the ALJ did not err in failing to re-contact Dr. Sisson for any purported clarification of that physician's opinion.

The ALJ's RFC is supported not just by the opinion of Dr. Sisson, but also four non-examining State Agency medical consultants. Their opinions may also be legitimately considered by the ALJ in determining Plaintiff's RFC. See Thomas v. Barnhart, 278 F.3d 948, 957 (9th Cir. 2002).

Plaintiff also argues that the ALJ failed to include a limitation that Plaintiff must "use a cane as needed" because this was a limitation set by medical expert ("ME") Dr. Landau at a hearing before the ALJ held in February 2011, which limitation was accepted by a previous ALJ in a March 2011 Decision. (AR 331, 855.) But again, the Court finds no merit in this aspect of Plaintiff's argument because it was the ALJ's obligation to consider probative evidence. The ALJ considered whether Plaintiff required use of a cane when walking, and posed this as part of a hypothetical to the vocational expert ("VE"), who indicated that the two jobs identified by him as being available to Plaintiff would still be performable. (AR 846.) Moreover, Plaintiff did not bring a cane to the hearing and only indicated in her testimony that she used a cane on "really bad days." (AR 846.) Further, Dr. Sisson, Plaintiff's prior treating physician, never assessed that Plaintiff required a cane. (AR 300-303.) Rather, Dr. Sisson rendered his opinion that Plaintiff would be required to

periodically alternate between sitting and standing to relieve her pain, and the ALJ included that limitation in the RFC assessment. (AR 301.) Similarly, none of the four State Agency medical consultants assessed that Plaintiff required the use of a cane. (AR 292, 299, 565, 578.) Indeed, there is no evidence in the record that any physician ever prescribed a cane for Plaintiff.

Plaintiff submitted to several consultative examinations. Dr. Sophon reported that Plaintiff did not use an assistive device, and related that she walked with a normal gait. (AR 286, 570.) The records of Concentra Medical Center Physical Therapy Unit describe that Plaintiff walked with a normal gait. (AR 194, 198, 201-212.) Thus, there is only Dr. Landau's ventured opinion that Plaintiff required a cane to ambulate, but the ALJ was not required to include such a limitation when there was such substantial and ample evidence to the contrary.

At the current hearing, the ALJ took testimony from a VE, who identified two jobs at the Step Five level of evaluation. This included electronics worker and production solderer. This testimony was provided consistent with the DOT. Plaintiff argues that the VE's testimony was insufficient because it did not rely on a hypothetical from the ALJ that Plaintiff required use of a cane as needed and that she required extra unscheduled breaks. But these limitations were not required to be placed in the hypothetical question, because there is no evidence in the record to support them. As noted, there is substantial evidence to the contrary that Plaintiff could ambulate without the assistance of a cane or other device. Further, with regard to a purported requirement that Plaintiff requires extra unscheduled breaks, there is simply no medical evidence in the record

that substantiates such a limitation.

Plaintiff argues that a hypothetical question should have been posed to the VE that she needs to change positions every 15 minutes. Instead, the ALJ determined that Plaintiff could alternate between sitting and standing as needed to relieve her pain (AR 807), and on that basis, the VE identified two available occupations. (AR 840-841.) The Court finds that the ALJ was not required to include these limitations in a hypothetical question to the VE, because there is no objective evidence to support them. Even if Plaintiff was required to change position every 15 minutes, this would only eliminate one of the Step Five positions, and would therefore not impact on the ALJ's conclusion that Plaintiff is not disabled because there is an available occupation that she can perform.

Based on all of the foregoing, the Court concludes that Plaintiff's first issue has no merit.

## II

**THE ALJ'S CREDIBILITY ASSESSMENT IS SUPPORTED BY SUBSTANTIAL EVIDENCE AND MEETS PREVAILING LEGAL REQUIREMENTS**

The ALJ's credibility assessment is the subject of Plaintiff's second issue. She asserts that the ALJ did not meet the standard of citation to "clear and convincing reasons" to reject her subjective complaints and thus her credibility as to these complaints. The parties do not dispute the applicable law; the question is whether the ALJ's assessment meets the requirements of that law.

In reviewing the ALJ's Decision, the Court finds four separately stated bases for the negative credibility assessment. First, the ALJ generally held that the medical evidence in the record did not

6

correlate with the level of intensity of Plaintiff's claimed symptoms. Medical evidence cannot be the sole ground for rejecting subjective complaints, but it is a relevant factor. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001); 20 C.F.R. § 416.929(c)(2). The ALJ's review of the medical evidence indicated that she has irregularities or abnormalities in her lumber spine area, but the objective examinations by consulting physicians were more benign. Plaintiff was twice examined by consulting physician Dr. Sophon. Dr. Sophon observed that Plaintiff could sit and stand, had normal posture, walked with normal gait, was able to get up from a chair without difficulty, and walked on her tiptoes and heels without difficulty. (AR 286, 396.) She had negative straight leg raising tests in both sitting and supine positions, she exhibited normal motor strength, and her lumbar spine examination showed no tenderness or muscle spasm. (AR 286, 396, 815.) In a more recent examination in March 2010, there were also relatively benign findings. (AR 571-72, 815.)

Plaintiff's treating physician, Dr. Coppelson, indicated that Plaintiff had normal motor strength and her range of motion was similarly in the normal range. (AR 255-261, 397.)

As a second basis, the ALJ determined that Plaintiff received essentially conservative treatment, and that she reported improved symptoms. Plaintiff argues that epidural injections are not conservative treatment. The ALJ recognized that she had received this type of treatment, but also that her physician had not recommended additional surgical intervention. (AR 706, 810, 307.) The Court does not consider it to be error that the ALJ assessed the overall level of Plaintiff's treatment as generally routine in nature. In addition,

Plaintiff did report that her symptoms were improved. This was noted by treating physician Dr. Archer. (AR 236, 397.) Further, while Plaintiff indicated she was unable to exercise because of her bad back (AR 752), she did follow the treatment recommendations of Dr. Bolivar that she lose weight, which she did with exercise and diet. (AR 991-992, 1004.)

As a third basis, the ALJ considered Plaintiff's activities of daily living. Plaintiff contends that these were of such a limited nature that they could not be considered as a relevant factor to depreciate her credibility. She did, however, testify that she was able to prepare food, wash her laundry, and drive a car. (AR 24, 400, 809.) Plaintiff contends that the ALJ's reliance on the fact that she went on vacation in her native country is an impermissible credibility factor. The Court does not agree, as this activity would entail substantial physical exertion. Certainly, with the level of pain that Plaintiff claimed on a persistent basis, such a trip would seem inconsistent.

As a fourth basis, the ALJ relied upon several medical opinions in the record which indicated that she was not as restricted as her claims would indicate. This included evaluation of the opinions of treating physician Dr. Sisson, who opined that Plaintiff could do a modified range of light work. (AR 300-303, 814.) Further, as noted previously, the ALJ relied upon two consultative examinations by Dr. Sophon, and there are also four State Agency medical consultants who rendered opinions that Plaintiff could do medium work. These have been previously discussed by the Court.

All in all, the Court finds that the ALJ did not err in making his credibility assessment, and thus, there is no merit to Plaintiff's

second issue.

The decision of the ALJ will be affirmed.  The Complaint will be dismissed with prejudice.

**IT IS SO ORDERED**.


DATED: December 20, 2013              /s/
                                VICTOR B. KENTON
                                UNITED STATES MAGISTRATE JUDGE